**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ITALO MAGNIFICO,**

    **Petitioner,**

**v.**                                  **CASE NO:   8:09-CV-1303-T-23AEP
                                                                             8:02-CR-0129-T-23TBM**

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court by referral from the Honorable Steven D. Merryday for a Report and Recommendation (Dkt. No. 9) on Italo Magnifico's ("Magnifico") Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1).[1] Magnifico plead guilty to conspiracy to distribute 3, 4-methylenedloxymethamphetamine (MDMA), also known as "ecstasy," in violation of 21 U.S.C. § 846, and to conspiracy to import ecstasy into the United States, in violation of 21 U.S.C. § 963. He was sentenced to 135 months imprisonment. Magnifico's Motion to Vacate alleges that defense counsel failed to timely appeal, contrary to Magnifico's specific request. (Dkt. No. 1.) An evidentiary hearing was held before the undersigned on March 12, 2010. Based upon the evidence presented, the undersigned finds that Magnifico did not ask defense counsel to take an appeal, and therefore, I recommend that Magnifico's Motion to Vacate be denied.

---

[1] All references to the docket entries are to Case No. 8:09-CV-1303-T-23AEP unless otherwise specified.

I.      Procedural History and Factual Background

On April 16, 2008, Magnifico entered into a plea agreement with the Government, agreeing to plead guilty to conspiracy to distribute ecstasy, in violation of 21 U.S.C. § 846, and conspiracy to import ecstasy into the United States, in violation of 21 U.S.C. § 963. (Gov't Ex. 1.) By the terms of the plea agreement, Magnifico expressly waived his right to appeal his sentence or:

> . . . to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(*Id.* at 8-9.) Before Magnifico's sentencing hearing, the United States Probation Office prepared a presentence investigative report ("the PSR"). The PSR provided that under the Sentencing Guidelines the applicable imprisonment range was 135 to 168 months based on a total offense level of 33. On July 25, 2008, the Honorable Steven D. Merryday sentenced Magnifico to a term of 135 months. (Case No. 8:02-cr-00129-T-23TBM, Dkt. No. 142.) A notice of appeal was not filed prior to the August 8, 2008 deadline for filing a direct appeal.

On July 13, 2009, Magnifico filed the instant Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 alleging that his counsel failed to file a notice of appeal. (Dkt. No. 1.) Specifically, Magnifico alleged that he requested his attorneys, Franklyn Louderback, Esq., and James E. Felman, Esq., to file an appeal after he was sentenced. (*Id.* at 8.) Magnifico alleged that

he asked his attorneys to file an appeal "based upon the fact that the use of the November 1, 2007, guidelines resulted in an ex post facto violation." (*Id.* at 9.)

The Government filed a Response in Opposition to Magnifico's Motion to Vacate on October 14, 2009. (Dkt. No. 7.) The Government argued that Magnifico provided no details or evidence or other documentation indicating that he told his counsel to appeal his sentence. (*Id.* at 7.) The Government also submitted an affidavit from Mr. Louderback who stated Magnifico did not request a notice of appeal be filed during the ten day period from entry of the judgment. (*Id.* at 8; Gov. Ex. 2.)

Magnifico filed a Reply to the Government's Response on November 2, 2009. (Dkt. No. 8.) In the Reply Magnifico maintained that he requested Attorney Louderback to file an appeal. (*Id.* at 2.) Magnifico also asserted that he had requested that his brother, Primo Magnifico, and nephew-in-law, David Greenspan, remind Mr. Louderback to file the appeal. (*Id.*)

Thereafter, an evidentiary hearing was held before the undersigned on March 12, 2010. The Government called as witnesses the three attorneys who represented Magnifico during the underlying criminal proceedings: Franklyn Louderback, Esq., James E. Felman, Esq., and Katherine Yanes, Esq. Magnifico testified in his own behalf, and also called Primo Magnifico and David Greenspan as witnesses. The testimony at the evidentiary hearing established the following.

**A.     Government's Witnesses.**

Mr. Louderback has been a licensed attorney in the State of Florida since 1975, and he primarily handles criminal matters. Mr. Louderback represented Magnifico beginning in December 2004 when Magnifico was facing extradition from Canada to the United States, through

3

the date of Magnifico's sentencing on July 25, 2008. Mr. Louderback testified that during his representation of Magnifico he discussed the plea agreement with Magnifico, specifically including the appellate waiver provision. Mr. Louderback testified that in his experience he has reviewed at least "dozens" of plea agreements with defendants, which contain appellate waivers like the one found in Magnifico's plea agreement. As such, Mr. Louderback was confident that he thoroughly explained to Magnifico the appellate waiver provision.

Mr. Louderback noted that a key issue in Magnifico's case was the fact that on May 1, 2001, the United States Sentencing Guidelines ("Guidelines") were amended to significantly increase the drug equivalency ratio used to calculate the base offense level in cases involving ecstasy. Mr. Louderback stated that he specifically discussed with Magnifico possible sentences that Magnifico might receive depending upon whether the Court would utilize the amended Guidelines or not.

Mr. Louderback stated that in light of the Guideline issues in Magnifico's case, Mr. Felman and Ms. Yanes were brought into the case to handle Magnifico's sentencing hearing. Mr. Louderback was present at Magnifico's sentencing hearing, but Mr. Felman and Ms. Yanes primarily handled the hearing. Mr. Louderback testified that during the ten day period following the judgment entered on July 25, 2008, he had discussions with Magnifico, but that Magnifico never requested that Mr. Louderback file an appeal. (*See also* Gov. Ex. 2.) Specifically, phone records from the Pinellas County Jail reflect calls to Mr. Louderback's office on July 28, 2008, and July 30, 2008, lasting six and ten minutes, respectively. (*See* Def. Ex. 1.) Mr. Louderback testified that had Magnifico asked him to file an appeal, he would have referred Magnifico to Mr. Felman. But Mr. Louderback stated that he was never instructed to file an appeal by Magnifico

4

until approximately six months after the sentencing hearing. Additionally, Mr. Louderback stated that he did not recall Primo Magnifico or Magnifico's wife directing him to file an appeal. Further, he testified that he did not know who David Greenspan was.

Mr. Felman testified after Mr. Louderback. Mr. Felman has been a licensed attorney in the State of Florida since 1988. Mr. Felman was retained to represent Magnifico primarily to handle the sentencing phase.[2] Mr. Felman argued during sentencing that a departure or variance from the PSR's recommended sentence under the amended Guidelines was appropriate for several reasons: the arbitrary application of the "one-book" rule under the amended guidelines; Magnifico's significant restrictions on his liberties for an extended period of time in Canada; the sentence disparity between Magnifico's and his co-defendants; and because the amendment to the ecstasy sentencing guidelines was flawed and owed less deference. (*See also* Case No. 8:02-cr-00129-T-23TBM, Dkt. No. 140.)

Mr. Felman testified that in addition to Mr. Louderback, he also specifically discussed the plea agreement with Magnifico, including the waiver provision regarding Magnifico's limited right to appeal. Mr. Felman testified that from the time that Magnifico was sentenced, to the deadline for appeal, he had discussions with Magnifico, but that Magnifico never requested or directed that Mr. Felman file an appeal. Mr. Felman acknowledged having discussions with Magnifico regarding filing an appeal, but that it was agreed an appeal would not be pursued because of the waiver provision, and because there was not a right to review under the law for appealing the Court's decision not to vary or depart from the guidelines.

---

[2] As noted previously, Mr. Louderback remained on the case as well.

5

Ms. Yanes was the last witness for the Government. She has been a licensed attorney in the State of Florida since 1998. Ms. Yanes was also retained to represent Magnifico during the sentencing phase. Ms. Yanes recalled meeting with Magnifico at the Pinellas County Jail prior to sentencing (with Mr. Louderback and Mr. Felman) to discuss the plea agreement. Specifically, Ms. Yanes recalled that the discussion addressed the waiver of appeal provision in the plea agreement.

Ms. Yanes was present at Magnifico's sentencing on July 25, 2008, and during a subsequent phone conversation with Magnifico on July 28, 2008.[3] Ms. Yanes recalled that during the phone conversation it was discussed with Mr. Magnifico that the Court's decision not to vary from the guidelines was not a basis for appeal. Ms. Yanes recalled that it was explained to Magnifico that the "one-book" issue was a good argument for a possible variance, but that it was not grounds for an appeal. Ms. Yanes testified that Mr. Magnifico did not direct her or Mr. Felman to file an appeal prior to the deadline. On cross-examination Ms. Yanes testified that she believed that they (she and Mr. Felman) would have discussed the appeal waiver with Magnifico on July 28, 2008. However, in terms of Ms. Yanes' independent recollection she could not specifically recall whether the appeal waiver was discussed on July 28, 2008.

Ms. Yanes recalled that she had communications with Magnifico in December 2008, but those communications did not pertain to not filing an appeal. She recalled the first time that the issue of not filing an appeal was brought up was in letter from Magnifico in March or April of 2009. (*See* Gov. Ex. 6; *see also* Def. Ex. 2.) Ms. Yanes responded to that communication in a

---

[3] Ms. Yanes' notes reflect a conversation from 10:48 to 11:17 a.m. (Gov. Ex. 3. at 2.) Mr. Felman was also a party to the conversation.

letter dated April 10, 2009, informing Magnifico that if it would have been possible to file an appeal in his case, that appeal would not have succeeded. (Gov. Ex. 6.)

Ms. Yanes later received an e-mail communication in October 2009 from Magnifico concerning his § 2255 Motion and the Government's Response. (*See* Gov. Ex. 5.) Ms. Yanes stated in a reply e-mail to Magnifico dated October 23, 2009, that, if called to testify, she (and Mr. Felman) would "have to tell the truth, which is that you did not ask us to file a notice of appeal on your behalf, and we explained to you that you had waived your right to appeal in your plea agreement and that we did not believe you had a meritorious appeal." (Gov. Ex. 5.) Magnifico responded to Ms. Yanes' message via e-mail stating in relevant part:

> . . . I believe strongly that I was very candide about asking jim and frank about appealing . . I was told by jim/frank that I had no merit to appeal and that appealing my sentence would not work and maybe receive more time . . . frank and jim persuade me not to appeal, but they should have filed and 'Andrews brief' . . . I would like if jim would please send me an a letter that, we did speak about the appeal and his remarks where as such . . that he advised me not to because they would give me more time and I had no merit . . but I did mention to him about appealing . . . my brother/nephew, wife did speak to frank and did talk also about appealing . . we all did, because we knew how unfair the sentence was . . . Katherine, if I knew for sure that I would receive an approval on my treaty transfer on my next application then perhaps I would not proceed . . . .

(Gov. Ex. 5.) Ms. Yanes responded to Magnifico's message by e-mail on October 26, 2009, stating, in pertinent part, the following:

> You state in your 2255 motion that you asked us to file a notice of appeal on your behalf, and that simply is not true. The truth is that we advised you that we did not believe an appeal would be successful, in large part because you waived your right to appeal in your plea agreement . . . You are correct that we advised you that we did not believe that you would succeed on appeal if you did take one . . . You also say in your e-mail that Jim and Frank should have filed an *Anders* brief . . . You did not instruct us to file a notice of appeal on your behalf, so we were not in a position to have to file an *Anders* brief.

7

(Gov. Ex. 4.)

### B. Magnifico's Witnesses.

Magnifico recalled during his testimony the events surrounding his plea agreement and the PSR that was issued before his sentencing. Magnifico testified that he was shocked to learn that the PSR utilized the amended Guidelines which provided for a minimum sentence of 135 months. Magnifico stated that he first told Mr. Louderback to file an appeal when he received the PSR, telling Mr. Louderback that he wanted to appeal if the Court sentenced him under the amended Guidelines. Magnifico also testified that he told Mr. Louderback to file an appeal after he was sentenced. He stated that Mr. Louderback later told him that an appeal would have no merit. Magnifico stated that during one of his conversations with Mr. Louderback (either on July 28, 2008, or July 30, 2008), he told Mr. Louderback to file an appeal. Magnifico also recalled that he met with Mr. Louderback weeks after his sentencing and raised the issue of the appeal again. Magnifico stated Mr. Louderback told him he had no merit to appeal and that he did not file an appeal.

Magnifico also testified that he specifically instructed Mr. Felman to file an appeal. Magnifico recalled meeting with Mr. Felman after receiving the PSR, but prior to sentencing, and telling him to file an appeal. Magnifico stated that he told Ms. Yanes to file an appeal during a July 28, 2008 phone conversation. Magnifico stated that Ms. Yanes told him the appeal had no merit and that he had signed the appeal waiver in his plea agreement.

Last, Magnifico testified that he told his brother, Primo Magnifico, to remind Mr. Louderback to file an appeal if the Court used the amended Guidelines. Magnifico also told Primo to have David Greenspan also contact Mr. Louderback to have him file an appeal.

On cross-examination by the Government, Magnifico stated that he was unsure if he was told, prior to entering into the plea agreement, that the amended Guidelines could be applied in his case. Additionally, Magnifico stated that Mr. Louderback promised that he would be sentenced to 87 months. Magnifico testified that he told Mr. Louderback after the sentencing hearing to file an appeal, but Mr. Louderback "shut [him] down." He stated that he was "speechless" when Mr. Louderback told him he had waived his right to appeal and that any appeal would have no merit. With respect to Mr. Felman and Ms. Yanes, Magnifico testified he again was "speechless" when they told him he had waived his right to appeal and any appeal had no merit.

Primo Magnifico, Magnifico's brother, testified that he asked Mr. Louderback to file an appeal immediately after the sentencing hearing, and again about two or three days later. Primo stated that Mr. Louderback told him that an appeal would not have any merit.

Mr. David Greenspan, a nephew-in-law of Magnifico, testified that he had two to three phone conversations with Mr. Louderback regarding an appeal after Magnifico was sentenced. Mr. Greenspan testified that he told Mr. Louderback, on Magnifico's behalf, to file an appeal, but that Mr. Louderback told him there were no grounds for appeal.

II.  Analysis

As stated by Magnifico, "[t]he sole issue presented . . . is whether counsel . . . were ineffective when [they] failed to file a notice of appeal at petitioner's request." (Dkt. No. 1 at 8.) To prove his claim that counsel was ineffective for failing to file a notice of appeal, Magnifico must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Eleventh Circuit has described the test as follows:

9

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

The Supreme Court has applied the principles in *Strickland v. Washington* to a claim of ineffective assistance of counsel due to counsel's failure to prosecute a direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). In *Flores-Ortega,* the Court addressed the standards applicable to three distinct situations involving counsel's alleged failure to protect a client's appellate rights: (1) where counsel fails to file an appeal even though the defendant unquestionably expresses his desire to appeal;[4] (2) where the defendant faults counsel for not appealing even though the defendant stated that he did not want an appeal; and (3) where the defendant's desire to appeal is not clearly expressed one way or another. *Flores-Ortega*, 528 U.S. at 476-77. As to the third situation, the *Flores-Ortega* Court stated that:

> [I]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact *consulted* with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.

---

[4] *Flores-Ortega*, 528 U.S. at 477 ( stating that ". . . a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . [because] [a] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.") (citations omitted).

10

*Flores-Ortega*, 528 U.S. at 478 (emphasis added).

Here, Magnifico has not asserted a challenge to the adequacy of counsel's consultations regarding an appeal. Moreover, at the evidentiary hearing, Magnifico did not raise any argument relating to counsel's consultations with Magnifico about an appeal. Consequently, the principles in *Flores-Ortega* regarding consultation are inapplicable to this matter. The only question before the Court is simply whether or not Magnifico requested any and/or all of his lawyers, Mr. Louderback, Mr. Felman, and Ms. Yanes, to file an appeal.

In this case, the issue is contingent upon a credibility determination by the Court. Magnifico testified in no uncertain terms that he instructed all of his lawyers, Mr. Louderback, Mr. Felman, and Ms. Yanes, to file an appeal.[5] While on the other hand, each of the lawyers testified unequivocally that Magnifico never instructed them to file an appeal during the appropriate time period. If Magnifico's testimony and other evidence was accepted by the Court, that evidence would be sufficient to warrant the granting of his belated appeal. However, I cannot accept Magnifico's testimony and evidence because I find it not credible for several reasons.

As an initial matter, Magnifico's credibility must be subject to question because he is a convicted felon, and he has the most to gain in this matter. Whereas, attorneys Louderback, Felman, and Yanes have no vested interest in the outcome of this matter, and have no known reason to mislead the Court. Additionally, I find Magnifico's testimony wholly incredible in that Mr. Louderback promised him a sentence of 87 months, and that he was unsure if he was advised as to whether the amended Guidelines could be applied in his case. First, Mr. Louderback is a

---

[5] To prevail on his Section 2255 Motion, Magnifico need only demonstrate that he instructed at least one of his lawyers to file an appeal, and that lawyer failed to follow his request.

seasoned criminal defense attorney who has defended many federal criminal defendants in this Court. As such, Mr. Louderback is more than intimately familiar with the application of the Guidelines, and the simple reality that no defendant can be guaranteed any particular sentence. Thus, I find it implausible that Mr. Louderback would guarantee Magnifico a sentence of 87 months. Further, it is clear to the Court that a core issue in Magnifico's case was whether the amended Guidelines would apply to his sentencing. This issue was one of the main reasons why Mr. Felman and Ms. Yanes were retained to represent Magnifico at his sentencing hearing. Thus, it is inconceivable that Magnifico was not specifically advised by his lawyers about the potential that the amended Guidelines could apply to his case. As attorneys Louderback, Felman, and Yanes testified, not only was Magnifico consulted regarding the potential application of the amended Guidelines to his sentence, but he was also specifically advised that due to the appellate waiver in this plea agreement he would not be able to appeal any adverse ruling by the Court regarding the applicability of the amended Guidelines.

Although both Primo Magnifico and David Greenspan testified that they, on behalf of Magnifico, instructed Mr. Louderback immediately after the sentencing to file an appeal for Magnifico, Mr. Louderback testified he never heard of David Greenspan, and that certainly at no time did either Mr. Greenspan or Primo Magnifico instruct him to file an appeal for Magnifico. In this regard I find Mr. Louderback's testimony more credible. Obviously, both Primo Magnifico and David Greenspan have an interest in assisting their family member, Magnifico. Further, it is questionable as to why Magnifico would need his family members to instruct Mr. Louderback to file an appeal if, as Magnifico claims, he had already instructed Mr. Louderback to file an appeal himself. Notably, it is also inexplicable that if Primo Magnifico and David Greenspan were so

12

worried about the filing of an appeal, why they didn't also contact attorneys Felman and Yanes and direct them to file an appeal as well, or at a minimum consult with them regarding the issue.

Additionally, I find it significant that there is no substantive communication between Magnifico and his lawyers regarding the issue of an appeal until Magnifico began to pursue the instant Section 2255 Motion. If Magnifico instructed his lawyers to file an appeal, then clearly he would at a minimum have attempted to have follow-up discussions with his lawyers to inquire about the status of the appeal. However, the record is silent as to any follow-up discussions between Magnifico and his lawyers about an appeal. Rather, the follow-up discussions between Magnifico and his lawyers regarding an appeal are Magnifico's e-mail solicitations to Ms. Yanes seeking help for his Section 2255 Motion. (*See* Gov. Ex. 5 (stating that "frank and jim persuade me not to appeal . . . I would like if jim would please send me [] a letter that, we did speak about the appeal . . . .).)

Most telling in this case is the fact that this is not a situation where it is a defendant's testimony versus his former lawyer's testimony. Rather, in this case Magnifico was represented by three experienced, highly talented criminal defense lawyers. Magnifico claims he told each of his three lawyers to file an appeal, and that each one them failed to follow his directive. I find it simply inconceivable that Magnifico instructed lawyers Louderback, Felman, and Yanes to file an appeal, and that they individually and/or collectively disregarded his instructions.

For these reasons, I reject as not credible Magnifico's testimony and other evidence that he requested his lawyers to file an appeal. In other words, I find that at no time did Magnifico request any of his lawyers, Mr. Louderback, Mr. Felman and/or Ms. Yanes, to file an appeal. Since this was the sole issue presented by Magnifico, then his Section 2255 Motion is without merit.

13

III. Conclusion

Based on the record and the totality of the circumstances, Magnifico has not shown that he instructed his counsel to file an appeal, and therefore his claim of ineffective assistance of counsel fails.

Accordingly, it is **RECOMMENDED** that Magnifico's Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 2nd day of July, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday
Counsel of Record